486

24 C.C.P.A.(Patents)

## In re BATES.*
### Patent Appeal No. 3761.

Court of Customs and Patent Appeals.
March 22, 1937.

——————♦——————

Caesar & Rivise, of Philadelphia, Pa. (Charles W. Rivise, of Philadelphia, Pa., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Claims 1, 2, 3, and 4 of appellant's application for a patent relating to materials for and methods of coloring foodstuffs were rejected by the Primary Examiner of the United States Patent Office. Claims 5 to 8, inclusive (method claims), were allowed. The decision of the examiner rejecting the claims was affirmed by the

Board of Appeals, and the appellant has appealed from the decision of the latter to this court.

Claim 3 is regarded as illustrative and follows: "3. A food coloring material consisting of an intimate relatively dry mixture of iodesine and alkali in substantially the proportions necessary to produce erythrosine, said ingredients being present in substantially unreacted condition."

The references relied upon are:
Wenker, 1,647,162, November 1, 1927.
Bauer et al., 1,711,009, April 30, 1929.
"Colour Index," Society of Colourists and Dyers—Dye No. 772. Page 195.
"Coal Tar Dyes," Fay (1919), pages 230 and 231.

It will be noticed that the application relates to food coloring and that the allowed claims cover the method of coloring foodstuffs, while the appealed claims relate to the food coloring material. In describing the invention involved in the appealed article claims, which were the only claims before the board, the board said:

"Appellant presents a food coloring material which may be applied to not only foodstuffs but medicines, antiseptics, dentrifices, tooth pastes and the like. This coloring material or dye is called erythrosine. This material is the sodium or potassium salt of tetraiodofluorescein which is also known as iodeosine. The term 'color acid' is applied to the terms tetraiodofluorescein and iodeosine.

"Appellant urges that if erythrosine is made by making a sodium salt of iodeosine certain degradation products are produced which are detrimental to the product. What appellant has done is to provide a dry mixture of an alkali and iodeosine which due to the dryness will not ordinarily react. When this mixture is placed in water or in a liquid foodstuff the alkali salt of iodeosine otherwise known as erythrosine is formed in situ. Appellant claims that formation of the dye in the material to be colored has numerous advantages."

It is the contention of appellant here, and evidently was the contention before the tribunals below, that his food coloring material is patentable because it calls for an intimate mixture of the color acid of erythrosine and an alkali which is a mechanical mixture, and is in an unreacted condition, ready to react when water or other liquid is applied.

*Appellant's petition for rehearing denied May 3, 1937.

The examiner and the board seemed to use the references Wenker and Bauer et al., for the purpose of showing that it was customary to provide a dry mixture of old ingredients which may readily be dissolved in water, reacting to form a desired compound. These references fully disclose such a situation. The references Fay and the "Colour Index" show the process of synthesizing erythrosine which involves formation of iodeosine which is then treated with an alkali for the ultimate formation of the erythrosine dye.

Appellant here argues at some length and cites certain authorities which he claims support his contention that, since the Wenker and Bauer et al. references relate to a nonanalogous art, it was improper for the tribunals to consider them in connection with the rejection of the appealed claims.

The board, in commenting upon this phase of the case, stated: "There seems to be no question that erythrosine is a well known product and disclosed in the prior art of record. It is not disputed that certain of the references show it is customary to provide a dry mixture of old ingredients which may at some future time be dissolved in water reacting to form a desired compound. It may be that the patents to Wenker and Bauer, which have been cited in this connection, are from a non-analogous art but they are cited to illustrate the fact above stated that a mechanical mixture of certain ingredients, which when combined with water will react, is well known."

We are inclined to agree with the position of the board on this phase of the case that the Wenker and the Bauer et al. references are not used in the sense that they anticipate appellant's alleged invention, but are cited as confirmative of the view that it was a common expedient to make a mechanical mixture of certain ingredients which, when later combined with water, will react. In other words, the position of the board is the same in legal effect as if it had held that there was no invention in making a mechanical mixture of the dry ingredients which were later to be mixed with water or other liquid, since it would be the obvious thing to do.

The board concluded that it was not convinced that appellant's compound is patentable inasmuch as it found no patentable novelty in appellant's mixture of ingredients and that it could not "find any unexpected and disproportionate result due to this mixture." In answer to appellant's argument that by virtue of first mixing the ingredients dry and then adding water, no objectionable impurities were introduced into the foodstuffs, the board said that this phase of appellant's application was properly protected by the allowance of the method claims in which it is brought out that erythrosine is formed within the foodstuff itself.

We are in entire agreement with the decision of the board that appellant's article claims do not define inventive subject matter, and the decision of the Board of Appeals is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate in this decision.